# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| **SMITH INTERFACE TECHNOLOGIES, LLC,** <br><br> **Plaintiff,** <br><br> **v.** <br><br> **SAMSUNG ELECTRONICS CO., LTD.,** <br><br> **and** <br><br> **SAMSUNG ELECTRONICS AMERICA, INC.,** <br><br> **Defendants.** | **Civil Action No. 2:22-cv-00290** <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Smith Interface Technologies, LLC ("Smith Interface" or "Plaintiff") files this Complaint for Patent Infringement against Defendants Samsung Electronics Co., Ltd. ("SEC") and Samsung Electronics America, Inc. ("SEA") (collectively, "Samsung"). Smith Interface alleges, based on personal knowledge with respect to its own actions and upon information and belief with respect to all others' actions, as follows:

### THE PARTIES

1.      Smith Interface is an entity organized and existing under the laws of the State of Texas with its principal place of business at PO Box 1567, Cedar Park, TX 78630.

2.      SEC is an entity organized and existing under the laws of South Korea with its principal place of business at 129 Samsung-Ro, Maetan-3dong, Yeongtong-gu, Suwon-si, Gyeonggi-do, Korea. SEC may be served pursuant to Fed. R. Civ. P. 4(f)(1).

- 1 -

3.      SEC designs, manufactures, makes, uses, imports into the United States, sells, and/or offers for sale in the United States SEC smartphones and tablets. SEC's smartphones and tablets are marketed, used, offered for sale, and/or sold throughout the United States, including within this district.

4.      SEA is an entity organized and existing under the laws of the State of New York with its principal place of business at 85 Challenger Rd., Ridgefield Park, New Jersey 07660. SEA may be served with process through its registered agent with the Texas Secretary of State, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

5.      SEA is a wholly owned subsidiary of SEC and oversees domestic sales and distribution of Samsung's consumer electronics products, including the products accused of infringement in this case.

6.      SEA and SEC have acted in concert with respect to the facts alleged herein such that any act of SEA is attributable to SEC, and vice versa.

## JURISDICTION AND VENUE

7.      This is an action arising under the patent laws of the United States, 35 U.S.C. § 101 *et seq.*

8.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, and 1338(a).

9.      Samsung is subject to this Court's specific and general personal jurisdiction due at least to Samsung's substantial business in this forum, including (i) at least a portion of the infringements alleged herein; or (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in the Eastern District of Texas.

10.     Specifically, Samsung intends to and does business in Texas, directly or through intermediaries and offers its products or services, including those accused of infringement, to customers and potential customers located in Texas, including in the Eastern District of Texas.

11.     Samsung maintains a regular and established place of business in this District, including 6625 Excellence Way, Plano, TX 75023. *WHERE TO FIND US*, available at https://www.sra.samsung.com/locations/ (last accessed Mar. 23, 2022). Samsung refers to this office as its "Mobile hub" for its smartphone product line. *Career & Job Opportunities at Samsung Electronics America*, available at https://www.themuse.com/profiles/samsungelectronicsamerica /location/plano (last accessed Mar. 23, 2022). Other divisions, including Networks, Mobile Marketing, Computing and Wearables, and Product Management, are located in the Plano facilities in this District. *Id.* Samsung has described this 216,000 square foot "flagship" Plano office, with over 1,000 employees, as part of its "longstanding and growing commitment to Texas." *Samsung Electronics America to Open Flagship North Texas Campus*, available at https://news.samsung.com/us/samsung-electronics-america-open-flagship-north-texas-campus/ (last accessed Mar. 23, 2022).

12.     "North Texas is home to Samsung Electronics America's second biggest employee population in the U.S. across multiple divisions – Customer Care, Mobile, Mobile R&D and Engineering." *Id.*

13.     In 2020, Samsung announced plans to expand its Plano presence. *See Samsung plans for Plano office expansion*, available at https://www.dallasnews.com/business/real-estate/2021/10/01/samsung-is-growing-its-huge-plano-regional-office/ (last accessed Mar. 28, 2022).

14.     Samsung has not disputed this Court's personal jurisdiction over it in other recent patent-infringement actions. *See, e.g.*, Answer at ¶ 10, *Barkan Wireless v. Samsung Elecs. Co., Ltd. et al.*, No. 2:18-cv-00028-JRG, Dkt. 25 (E.D. Tex., Apr. 23, 2018); Answer at ¶ 9, *Immersion Corp. v. Samsung Elects. Am., Inc.*, No. 2:17-cv-572, Dkt. 16 (E.D. Tex. Oct. Oct 24, 2017); Answer at ¶ 10, *Richardson v. Samsung Elects. Co., Ltd.*, No. 6-17-cv-428, Dkt. 15 (E.D. Tex. Oct. 20, 2017); Answer at ¶ 8, *Spacetime3D, Inc. v. Samsung Elects. Co., Ltd. and Samsung Elects. Am., Inc.*, No. 2:19-cv-00372, Dkt. 22 (E.D. Tex. May 16, 2020).

15.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1400(b) and 1391(c).

16.     Venue is proper against SEA in this District pursuant to 28 U.S.C. § 1400(b) because it has maintained established and regular places of business in this District and has committed acts of patent infringement in the District. *See In re Cray Inc.*, 871 F.3d 1355, 1362–63 (Fed. Cir. 2017). *See also supra* ¶¶ 11–12.

17.     Venue is proper against SEC pursuant to 28 U.S.C. § 1391(c)(3) because venue is proper in any judicial district against a foreign corporation. *See In re HTC Corp.*, 889 F.3d 1349, 1354 (Fed. Cir. 2018).

18.     In other recent patent actions, Samsung either "admit[ted]," (Answer at ¶ 14, *Richardson v. Samsung Elects. Co., Ltd.*, No. 6-17-cv-428, Dkt. 15 (E.D. Tex. Oct. 20, 2017)), or "d[id] not contest," (Answer at ¶ 10, *Immersion Corp. v. Samsung Elects. Am., Inc.*, No. 16-cv-572, Dkt. 16 (E.D. Tex. Oct. 24, 2017)), that this District is a proper venue for patent infringement actions against it. *See also, e.g.*, Answer at ¶ 12, *Barkan Wireless v. Samsung Elecs. Co., Ltd. et al.*, No. 2:18-cv-00028-JRG, Dkt. 25 (E.D. Tex., Apr. 23, 2018); Answer at ¶ 9–10 *Spacetime3D, Inc. v. Samsung Elects. Co., Ltd. and Samsung Elects. Am., Inc.*, No. 2:19-cv-00372, Dkt. 22 (E.D. Tex. May 16, 2020).

## THE TECHNOLOGY

19.     In his research, inventor Michael Smith recognized that as processor power and speed and memory capacity increased, mobile devices such as smartphones would become increasingly capable of more complex tasks and running feature-rich applications rivaling those even on desktop computers. But unlike desktop computers, mobile devices, being small and light, would always have miniature displays with highly limited screen real-estate. This severe constraint meant that interacting with feature-rich mobile applications would necessarily require different input and output techniques than those used on desktop computers. For example, instead of a mouse pointer indicating a single pixel with a mouse click, a user's finger touches a larger oval's worth of pixels all at once, creating the need for finger-sized targets. New user interface widgets taking such considerations into account would be required to intuitively and effectively operate mobile device applications.

20.     Therefore, to enable users to operate these new powerful mobile devices and their feature-rich applications, Smith developed new advanced input and output techniques for mobile user interfaces. A particular approach Smith used was to develop multi-part gestures, where users can take successive actions, such as by touching, tapping, long-pressing, or sliding, and receive feedback at each step, whether visual or tactile (or both). Working in tandem with Smith's gestures were integrated forms of feedback, such as using menus offering contextual actions or vibrotactile pulses used to confirm certain actions. Smith's intuitive and fluid combination of input and output enabled users to much more easily and effectively operate feature-rich interfaces on miniature displays with severely limited screen real-estate. These innovations represent a new class of user interface interactions distinct from those used on the desktop, and helped to usher in the next phase of mobile computing.

21.     These mobile UI advances resulted in numerous patents, including U.S. Patent Nos. 10,671,212 (the "'212 Patent"); 10,606,396 (the "'396 Patent"); 10,642,413 (the "'413 Patent"); 10,788,931 (the "'931 Patent"); 10,656,754 (the "'754 Patent"); 10,782,819 (the "'819 Patent"); and 10,649,580 (the "'580 Patent"); and 10,656,758 (the "'758 Patent") (collectively, the "Asserted Patents").

22.     The '212 Patent, titled "Gesture-equipped touch screen system, method, and computer program product," issued on June 2, 2020. *See* Ex.  A. Smith is the sole named inventor of the '212 Patent. The '212 Patent application (No. 16/558,028) was filed August 30, 2019, and is a continuation of and claims priority to numerous patents, patent applications, and provisional patent applications dating back to U.S. Provisional Application No. 61/515,835, filed Aug. 5, 2011. Smith Interface is the assignee and sole owner of the '212 Patent and has the full and exclusive right to bring action and recover damages for Samsung's infringement of the '212 Patent.

23.     The '396 Patent, titled "Gesture-equipped touch screen methods for duration-based functions," issued on March 31, 2020. *See* Ex.  B. Smith is the sole named inventor of the '396 Patent. The '396 Patent application (No. 16/155,876) was filed October 9, 2018, and is a continuation of and claims priority to numerous patents, patent applications, and provisional patent applications dating back to U.S. Provisional Application No. 61/515,835, filed Aug. 5, 2011. Smith Interface is the assignee and sole owner of the '396 Patent and has the full and exclusive right to bring action and recover damages for Samsung's infringement of the '396 Patent.

24.     The '413 Patent, titled "Gesture-equipped touch screen system, method, and computer program product," issued on May 5, 2020. *See* Ex.  C. Smith is the sole named inventor of the '413 Patent. The '413 Patent application (No. 16/169,961) was filed October 24, 2018, and is a continuation of and claims priority to numerous patents, patent applications, and provisional

patent applications dating back to U.S. Provisional Application No. 61/515,835, filed Aug. 5, 2011. Smith Interface is the assignee and sole owner of the '413 Patent and has the full and exclusive right to bring action and recover damages for Samsung's infringement of the '413 Patent.

25.     The '931 Patent, titled "Devices, methods, and graphical user interfaces for manipulating user interface objects with visual and/or haptic feedback," issued on September 29, 2020. *See* Ex.  D. Smith is the sole named inventor of the '931 Patent. The '931 Patent application (No. 16/724,366) was filed December 22, 2019, and is a continuation of and claims priority to numerous patents, patent applications, and provisional patent applications dating back to U.S. Provisional Application No. 61/515,835, filed Aug. 5, 2011. Smith Interface is the assignee and sole owner of the '931 Patent and has the full and exclusive right to bring action and recover damages for Samsung's infringement of the '931 Patent.

26.     The '754 Patent, titled "Devices and methods for navigating between user interfaces," issued on May 19, 2020. *See* Ex.  E. Smith is the sole named inventor of the '754 Patent. The '754 Patent application (No. 16/438,455) was filed June 11, 2019, and is a continuation of and claims priority to numerous patents, patent applications, and provisional patent applications dating back to U.S. Provisional Application No. 61/515,835, filed Aug. 5, 2011. Smith Interface is the assignee and sole owner of the '754 Patent and has the full and exclusive right to bring action and recover damages for Samsung's infringement of the '754 Patent.

27.     The '819 Patent, titled "Gesture-equipped touch screen system, method, and computer program product," issued on September 22, 2020. *See* Ex.  F. Smith is the sole named inventor of the '819 Patent. The '819 Patent application (No. 16/155,879) was filed October 9, 2018, and is a continuation of and claims priority to numerous patents, patent applications, and provisional patent applications dating back to U.S. Provisional Application No. 61/515,835, filed

Aug. 5, 2011. Smith Interface is the assignee and sole owner of the '819 Patent and has the full and exclusive right to bring action and recover damages for Samsung's infringement of the '819 Patent.

28.    The '580 Patent, titled "Devices, methods, and graphical use interfaces for manipulating user interface objects with visual and/or haptic feedback," issued on May 12, 2020. *See* Ex.  G. Smith is the sole named inventor of the '580 Patent. The '580 Patent application (No. 16/664,777) was filed October 25, 2019, and is a continuation of and claims priority to numerous patents, patent applications, and provisional patent applications dating back to U.S. Provisional Application No. 61/515,835, filed Aug. 5, 2011. Smith Interface is the assignee and sole owner of the '580 Patent and has the full and exclusive right to bring action and recover damages for Samsung's infringement of the '580 Patent.

29.    The '758 Patent, titled "Gesture-equipped touch screen system, method, and computer program product," issued on May 19, 2020. *See* Ex.  H. Smith is the sole named inventor of the '758 Patent. The '758 Patent application (No. 16/664,780) was filed October 25, 2019, and is a continuation of and claims priority to numerous patents, patent applications, and provisional patent applications dating back to U.S. Provisional Application No. 61/515,835, filed Aug. 5, 2011. Smith Interface is the assignee and sole owner of the '758 Patent and has the full and exclusive right to bring action and recover damages for Samsung's infringement of the '758 Patent.

### SAMSUNG ONE UI AND THE ACCUSED PRODUCTS

30.    Samsung infringes the Asserted Patents by making, using, selling, offering to sell, and importing its smartphones and tablets that run Samsung One UI. Exemplary accused infringing smartphones and tablets include, but are not limited to, the Samsung Galaxy Note Series, S Series, Z Series, A Series, M/F Series, XCover Series, J Series, Galaxy Tab S Series, and Galaxy Tab A Series (collectively the "Accused Products").

31.     In November 2018, Samsung "introduce[d] a new and intuitive interface design called One UI." *SDC 2018: Samsung Reveals Breakthroughs in Intelligence, IoT and Mobile UX*, Samsung Newsroom U.S. (Nov. 7, 2018), available at: https://news.samsung.com/us/sdc-2018-samsung-mobile-ux-one-ui-infinity-flex-display-bixby-smartthings-platform/.

32.     One UI "represents an integral part of [Samsung's] mission to continually create . . . intuitive experiences for [its] consumers throughout their device lifecycle." *Samsung One UI 3 Takes User Experience to New Heights with Android 11*, Samsung Newsroom (Dec. 3, 2020), available  at:  https://news.samsung.com/global/samsung-one-ui-3-takes-user-experience-to-new-heights-with-android-11.

33.     One UI is designed to "deliver a new kind of mobile experience allowing users to do things they couldn't do with an ordinary smartphone." *Id*. To deliver this new kind of mobile experience, One UI "simplify[ies] and streamline[s] interactions" and makes the user's "experience more natural, seamless and efficient." *One UI Beta Program: Android 10 on Galaxy S10 Available Starting Today*, Samsung Newsroom U.S. (Oct. 14, 2019), available at: https://news.samsung.com/us/one-ui-beta-program-android-10-galaxy-s10-coming-soon/.

34.     Samsung considers One UI to have "rewritten smartphone history." *How Samsung Galaxy Has Rewritten Smartphone History in 10 Innovative Technologies*, Samsung Newsroom (Feb.  9,  2022),  available  at:  https://news.samsung.com/global/how-samsung-galaxy-has-rewritten-smartphone-history-in-10-innovative-technologies.

### SAMSUNG'S KNOWLEDGE OF SMITH'S INVENTIONS

35.     The Asserted Patents, along with patent publications and patents sharing a common claim of priority with the Asserted Patents ("Smith Patent Family"), have been cited more than 500 times in the United States Patent and Trademark office during the prosecution of other U.S. patent applications.

36.     Among those citations, over 20 Samsung patents and patent publications include citations to patents and patent publications in the Smith Patent Family.

37.     On January 27, 2017, during the prosecution of Samsung's U.S. Patent No. 9,871,664, a patent examiner at the United States Patent and Trademark Office identified a member of the Smith Patent Family to Samsung.

38.     Subsequently, on July 12, 2019 during the prosecution of Samsung's U.S. Patent No. 10,949,012, which identifies its technical field as "a technology for providing a user interface associated with a force sensor," Samsung identified a member of the Smith Patent Family in a filing to the United States Patent and Trademark Office.

39.     Upon information and belief, and based on the repeated reference to the Smith Patent Family in Samsung's own patents, by March 2020 Samsung was aware of and had actual knowledge of the Smith Patent family and knew of its relevance to the field of mobile user interfaces.

40.     Upon information and belief, and based on Samsung's actual knowledge of the Smith Patent family and its relevance to the field of mobile user interfaces, Samsung has notice and actual, or constructive, knowledge of each of the Asserted Patents the day each Asserted Patent issued.

### COUNT I
### (CLAIM FOR PATENT INFRINGEMENT OF THE '212 PATENT)

41.     Smith Interface incorporates the foregoing paragraphs by reference as if fully set forth herein.

42.     A true and accurate copy of the '212 Patent is attached hereto as Exhibit A.

43.     All claims of the '212 Patent are valid and enforceable, and each enjoys a statutory presumption of validity under 35 U.S.C. § 282.

44.    The claims of the '212 patent are directed to an improvement of the user interface on a mobile device and not an abstract idea.

45.    Smith Interface is the sole owner of the '212 Patent and possesses rights to past damages.

46.    Independent claim 16 of the '212 Patent recites:

16. A mobile device, comprising:

a touch screen;

an actuator;

at least one processor;

memory configured to store an application; and

one or more programs, wherein the one or more programs are stored in the memory and configured to be executed by the at least one processor, the one or more programs including instructions to:

display indicia, utilizing the touch screen;

when a first duration of a touch being applied to the touch screen is detected as ceasing in connection with the indicia, perform an operation;

when a second duration of the touch, that is different than the first duration of the touch, being applied to the touch screen is detected in connection with the indicia after the first duration is detected without the ceasing, output feedback that is perceptible by touch, utilizing the actuator;

when the second duration of the touch being applied to the touch screen is detected in connection with the indicia after the first duration of the touch is detected without the ceasing, display at least one menu including a plurality of particular actions;

when a selection touch being applied to the touch screen is detected in connection with at least one of the particular actions of the at least one menu after the second duration of the touch being applied to the touch screen is detected in connection with

the indicia after the first duration of the touch is detected without the ceasing, perform the at least one particular action; and

when a slide or swipe gesture being applied to the touch screen is detected after the second duration of the touch being applied to the touch screen is detected in connection with the indicia after the first duration of the touch is detected without the ceasing, change at least one aspect of the display of the at least one menu.

47.     In violation of 35 U.S.C. § 271, Samsung has been and is still infringing (both literally and/or under the doctrine of equivalents), contributing to infringement, and/or inducing others to infringe of the '212 Patent by making, using, offering for sale, selling, importing, or encouraging and intending that others to use mobile devices that practice at least claim 16 of the '212 Patent, including but not limited to the Accused Products.

48.     As described above, Samsung designs, manufactures, makes, uses, provides, imports into the United States, sells and/or offers for sale in the United States the Accused Products and thus directly infringes (both literally and/or under the doctrine of equivalents) the '212 Patent.

49.     On information and belief, Samsung is currently and will continue to actively induce and encourage infringement of the '212 Patent. Samsung has known of the '212 Patent as describe above and, at a minimum, at least since the time this complaint was filed and served on Samsung. On information and belief, Samsung nevertheless actively encourages others to infringe the '212 Patent. On information and belief, Samsung knowingly induces infringement by others, including resellers, retailers, and end users of the Accused Products. For example, Samsung's customers and the end users of the Accused Products test and/or operate the Accused Products in the United States in accordance with Samsung's instructions contained in, for example, its user manuals, and as Samsung intends One UI to be used, thereby also performing the claimed methods and directly infringing the asserted claims of the Accused Products requiring such operation. These facts give rise to a reasonable inference that Samsung knowingly induces others, including

resellers, retailers, and end users, to directly infringe the '212 Patent, and that Samsung possesses a specific intent to cause such infringement.

50.     Samsung also contributes to infringement of the '212 Patent by selling for importation into the United States, importing into the United States, and/or selling within the United States after importation the accused devices and the non-staple constituent parts of those devices, which are not suitable for substantial noninfringing use and which embody a material part of the invention described in the '212 Patent. These mobile electronic devices are known by Samsung to be especially made or especially adapted for use in the infringement of the '212 Patent. These mobile devices are known by Samsung to be especially made or especially adapted for use in the infringement of the '212 Patent. Specifically, on information and belief, Samsung sells the accused devices to resellers, retailers, and end users with knowledge that the devices are used for infringement. End users of those mobile electronic devices directly infringe the '212 Patent.

51.     Smith Interface has, to the extent required, complied with the marking statute, 35 U.S.C. § 287.

52.     As a result of Samsung's infringement of the '212 Patent, Smith Interface has suffered and continues to suffer damages. Thus, Smith Interface is entitled to recover from Samsung the damages Smith Interface sustained (and continues to sustain) as a result of Samsung's wrongful and infringing acts in an amount no less than a reasonable royalty.

53.     Samsung's infringement of the '212 Patent has been willful. Samsung has known of the '212 Patent as describe above and, at a minimum, at least since the time this complaint was filed and served on Samsung. Upon information and belief, Samsung deliberately and intentionally infringed, and continues to deliberately and intentionally infringe, the '212 Patent. Samsung knew

or should have known that its actions would cause infringement of the '212 Patent, yet, Samsung has, and continues to, infringe the '212 Patent.

54.     This is an exceptional case warranting an award of treble damages to Smith Interface under 35 U.S.C. § 284, and an award of Smith Interface's attorney's fees under 35 U.S.C. § 285.

55.     By way of non-limiting example(s), set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 16 of the '212 Patent by the Accused Products. This description is based on publicly available information. Smith Interface reserves the right to modify this description, including, for example, on the basis of information about the Accused Products that it obtains during discovery.

56.     *16(a): "A mobile device, comprising: a touch screen; an actuator; at least one processor; memory configured to store an application; and one or more programs, wherein the one or more programs are stored in the memory and configured to be executed by the at least one processor, the one or more programs including instructions to:"*— The Accused Products are mobile devices that comprise a touch screen, an actuator, at least one processor, memory configured to store an application, and one or more programs. The one or more programs are stored in the memory and configured to be executed by the at least one processor, the one or more programs include instructions. An example is shown below:



57.     ***16(b): "display indicia, utilizing the touch screen;"***— The Accused Products are designed to display indicia, utilizing the touch screen. An example is shown below:



58.     ***16(c): "when a first duration of a touch being applied to the touch screen is detected as ceasing in connection with the indicia, perform an operation;"***— The Accused

Products, are designed that when a first duration of a touch being applied to the touch screen is detected as ceasing in connection with the indicia, perform an operation. An example is shown below:




59.    *16(d): "when a second duration of the touch, that is different than the first duration of the touch, being applied to the touch screen is detected in connection with the indicia after the first duration is detected without the ceasing, output feedback that is perceptible by touch, utilizing the actuator;"*— The Accused Products are designed that when a second duration of the touch, that is different than the first duration of the touch, being applied to the touch screen is detected in connection with the indicia after the first duration is detected without the ceasing, output feedback that is perceptible by touch, utilizing the actuator. An example is shown below:



60.    *16(e): "when the second duration of the touch being applied to the touch screen is detected in connection with the indicia after the first duration of the touch is detected without the ceasing, display at least one menu including a plurality of particular actions;"*— The Accused Products are designed that when the second duration of the touch being applied to the touch screen is detected in connection with the indicia after the first duration of the touch is detected without the ceasing, display at least one menu including a plurality of particular actions. An example is shown below:

 

61.    *16(f): "when a selection touch being applied to the touch screen is detected in connection with at least one of the particular actions of the at least one menu after the second duration of the touch being applied to the touch screen is detected in connection with the indicia after the first duration of the touch is detected without the ceasing, perform the at least one particular action; and"*— The Accused Products are designed that when a selection touch being applied to the touch screen is detected in connection with at least one of the particular actions of the at least one menu after the second duration of the touch being applied to the touch screen is detected in connection with the indicia after the first duration of the touch is detected without the ceasing, perform the at least one particular action. An example is shown below:

 

62.     ***16(g): "when a slide or swipe gesture being applied to the touch screen is detected after the second duration of the touch being applied to the touch screen is detected in connection with the indicia after the first duration of the touch is detected without the ceasing, change at least one aspect of the display of the at least one menu."*** — The Accused Products are designed that when a slide or swipe gesture being applied to the touch screen is detected after the second duration of the touch being applied to the touch screen is detected in connection with the indicia after the first duration of the touch is detected without the ceasing, change at least one aspect of the display of the at least one menu. An example is shown below:

 

<u>**COUNT II**</u>
**(CLAIM FOR PATENT INFRINGEMENT OF THE '396 PATENT)**

63.    Smith Interface incorporates the foregoing paragraphs by reference as if fully set forth herein.

64.    A true and accurate copy of the '396 Patent is attached hereto as Exhibit B.

65.    All claims of the '396 Patent are valid and enforceable, and each enjoys a statutory presumption of validity under 35 U.S.C. § 282.

66.    The claims of the '396 patent are directed to an improvement of the user interface on a mobile device and not an abstract idea.

67.    Smith Interface is the sole owner of the '396 Patent and possesses rights to past damages.

68.    Independent claim 1 of the '396 Patent recites:

1. A method, comprising:

at an apparatus including at least one non-transitory memory storing
    a plurality of applications, a touch screen, and one or more

processors in communication with the at least one non-transitory memory and the touch screen:

displaying a textual word in a virtual display layer;

detecting a gesture via the touch screen on the textual word;

detecting a first touch state;

in response to the detection of the first touch state, performing a first function in connection with the textual word, the first function including selecting the textual word;

detecting a second touch state; and

in response to the detection of the second touch state, performing a second function in connection with movement of the selected textual word, the second function including displaying the selected textual word in a plurality of virtual display layers including the virtual display layer and a separate virtual display layer, such that at least one of the plurality of virtual display layers is at least partially translucent.

69.     In violation of 35 U.S.C. § 271, Samsung has been and is still infringing (both literally and/or under the doctrine of equivalents), contributing to infringement, and/or inducing others to infringe of the '396 Patent by making, using, offering for sale, selling, importing, or encouraging and intending that others to use mobile devices that practice at least claim 1 of the '396 Patent, including but not limited to the Accused Products.

70.     As described above, Samsung designs, manufactures, makes, uses, provides, imports into the United States, sells and/or offers for sale in the United States the Accused Products and thus directly infringes (both literally and/or under the doctrine of equivalents) the '396 Patent.

71.     On information and belief, Samsung is currently and will continue to actively induce and encourage infringement of the '396 Patent. Samsung has known of the '396 Patent as describe above and, at a minimum, at least since the time this complaint was filed and served on Samsung. On information and belief, Samsung nevertheless actively encourages others to infringe

the '396 Patent. On information and belief, Samsung knowingly induces infringement by others, including resellers, retailers, and end users of the Accused Products. For example, Samsung's customers and the end users of the Accused Products test and/or operate the Accused Products in the United States in accordance with Samsung's instructions contained in, for example, its user manuals, and as Samsung intends One UI to be used, thereby also performing the claimed methods and directly infringing the asserted claims of the Accused Products requiring such operation. These facts give rise to a reasonable inference that Samsung knowingly induces others, including resellers, retailers, and end users, to directly infringe the '396 Patent, and that Samsung possesses a specific intent to cause such infringement.

72.    Samsung also contributes to infringement of the '396 Patent by selling for importation into the United States, importing into the United States, and/or selling within the United States after importation the accused devices and the non-staple constituent parts of those devices, which are not suitable for substantial noninfringing use and which embody a material part of the invention described in the '396 Patent. These mobile electronic devices are known by Samsung to be especially made or especially adapted for use in the infringement of the '396 Patent. These mobile devices are known by Samsung to be especially made or especially adapted for use in the infringement of the '396 Patent. Specifically, on information and belief, Samsung sells the accused devices to resellers, retailers, and end users with knowledge that the devices are used for infringement. End users of those mobile electronic devices directly infringe the '396 Patent.

73.    Smith Interface has, to the extent required, complied with the marking statute, 35 U.S.C. § 287.

74.    As a result of Samsung's infringement of the '396 Patent, Smith Interface has suffered and continues to suffer damages. Thus, Smith Interface is entitled to recover from

Samsung the damages Smith Interface sustained (and continues to sustain) as a result of Samsung's wrongful and infringing acts in an amount no less than a reasonable royalty.

75.    Samsung's infringement of the '396 Patent has been willful. Samsung has known of the '212 Patent as describe above and, at a minimum, at least since the time this complaint was filed and served on Samsung. Upon information and belief, Samsung deliberately and intentionally infringed, and continues to deliberately and intentionally infringe, the '396 Patent. Samsung knew or should have known that its actions would cause infringement of the '396 Patent, yet, Samsung has, and continues to, infringe the '396 Patent.

76.    This is an exceptional case warranting an award of treble damages to Smith Interface under 35 U.S.C. § 284, and an award of Smith Interface's attorney's fees under 35 U.S.C. § 285.

77.    By way of non-limiting example(s), set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '396 Patent by the Accused Products. This description is based on publicly available information. Smith Interface reserves the right to modify this description, including, for example, on the basis of information about the Accused Products that it obtains during discovery.

78.    *1(a): "A method, comprising: at an apparatus including at least one non-transitory memory storing a plurality of applications, a touch screen, and one or more processors in communication with the at least one non-transitory memory and the touch screen:"*— The Accused Products practice a method at an apparatus comprising an apparatus including at least one non-transitory memory storing a plurality of applications, a touch screen, and one or more processors in communication with the at least one non-transitory memory and the touch screen. An example is shown below:

**5NM PROCESSOR**

## The fastest Galaxy processor ever

Packing more speed, power and intelligence than ever, the **5nm processor** processor is fast enough to keep up with the action, so you can do more even faster.'

8GB of RAM

Galaxy S21+ 5G

**6.7"**

INFINITY-O DISPLAY⁴
DYNAMIC AMOLED 2X
EYE COMFORT SHIELD
SUPER SMOOTH 120HZ
DISPLAY

Galaxy S21 5G

**6.2"**

INFINITY-O DISPLAY⁴
DYNAMIC AMOLED 2X
EYE COMFORT SHIELD
SUPER SMOOTH 120HZ
DISPLAY

## How much storage comes with Galaxy S21 5G and S21+ 5G

Galaxy S21 and S21+ come in two sizes: 128GB and 256GB.

79.    ***1(b): "displaying a textual word in a virtual display layer;"***— The Accused Products are designed to display a textual word in a virtual display layer. An example is shown below:



80.    ***1(c): "detecting a gesture via the touch screen on the textual word;"***— The Accused Products  are designed to detect a gesture via a touch screen on the textual word. An example is shown below:



81.    ***1(d): "detecting a first touch state;"***— The Accused Products are designed to detect a first touch state. An example is shown below:



82.    *1(e): "in response to the detection of the first touch state, performing a first function in connection with the textual word, the first function including selecting the textual word;"*— The Accused Products, are designed such that in response to the detection of the first touch state, perform a first function in connection with the textual word, the first function including selecting the textual word. An example is shown below:



83.    **_1(f): "detecting a second touch state; and"_**— The Accused Products are designed to detect a second touching state. An example is shown below:



84.    **_1(g): "in response to the detection of the second touch state, performing a second function in connection with movement of the selected textual word, the second function_**

*including displaying the selected textual word in a plurality of virtual display layers including the virtual display layer and a separate virtual display layer, such that at least one of the plurality of virtual display layers is at least partially translucent."*— The Accused Products, are designed such that in response to the detection of the second touch state, perform a second function in connection with movement of the selected textual word, the second function including displaying the selected textual word in a plurality of virtual display layers including the virtual display layer and a separate virtual display layer, such that at least one of the plurality of virtual display layers is at least partially translucent. An example is shown below:



<u>**COUNT III**</u>
<u>**(CLAIM FOR PATENT INFRINGEMENT OF THE '413 PATENT)**</u>

85.    Smith Interface incorporates the foregoing paragraphs by reference as if fully set forth herein.

86.    A true and accurate copy of the '413 Patent is attached hereto as Exhibit C.

87.     All claims of the '413 Patent are valid and enforceable, and each enjoys a statutory presumption of validity under 35 U.S.C. § 282.

88.     The claims of the '413 patent are directed to an improvement of the user interface on an electronic device and not an abstract idea.

89.     Smith Interface is the sole owner of the '413 Patent and possesses rights to past damages.

90.     Independent claim 1 of the '413 Patent recites:

1. An electronic device, comprising:

a display;

a touch interface;

one or more processors;

memory; and

one or more programs, wherein the one or more programs are stored in the memory and configured to be executed by the one or more processors, the one or more programs including instructions for:

displaying, utilizing the display, a graphical user interface;

when the graphical user interface is displayed, detecting, utilizing the touch interface, a first gesture that begins in connection with a first edge of the display and moves inward;

in response to the detection of the first gesture that begins in connection with the first edge and moves inward, displaying, utilizing the display, a first menu as sliding in and including one or more first menu items, and blurring at least a portion of the graphical user interface such that a magnitude of the blurring of the at least portion of the graphical user interface progressively increases as a function of an increase in a magnitude of the first gesture being detected;

when the first menu is displayed including the one or more first menu items:

detecting, utilizing the touch interface, a first duration of contact on at least one of the one or more first menu items,

in response to the first duration of contact on the at least one of the one or more first menu items being detected to not surpass a threshold, performing a first operation, and

in response to the first duration of contact on the at least one of the one or more first menu items being detected to surpass the threshold, performing a second operation;

when the graphical user interface is displayed, detecting, utilizing the touch interface, a second gesture that begins in connection with a second edge of the display and moves inward;

in response to the detection of the second gesture that begins in connection with the second edge and moves inward, displaying, utilizing the display, a second menu including one or more second menu items;

when the second menu is displayed including the one or more second menu items:
detecting, utilizing the touch interface, a selection contact on at least one of the one or more second menu items, and

in response to the selection contact being detected on the at least one of the one or more second menu items, performing a third operation;

wherein the electronic device is configured such that the graphical user interface is displayed in at least one virtual display layer, and at least one of the first menu or the second menu is displayed in at least one other virtual display layer.

91.    In violation of 35 U.S.C. § 271, Samsung has been and is still infringing (both literally and/or under the doctrine of equivalents), contributing to infringement, and/or inducing others to infringe of the '413 Patent by making, using, offering for sale, selling, importing, or encouraging and intending that others to use mobile devices that practice at least claim 1 of the '413 Patent, including but not limited to the Accused Products.

92.     As described above, Samsung designs, manufactures, makes, uses, provides, imports into the United States, sells and/or offers for sale in the United States the Accused Products and thus directly infringes (both literally and/or under the doctrine of equivalents) the '413 Patent.

93.     On information and belief, Samsung is currently and will continue to actively induce and encourage infringement of the '413 Patent. Samsung has known of the '413 Patent as describe above and, at a minimum, at least since the time this complaint was filed and served on Samsung. On information and belief, Samsung nevertheless actively encourages others to infringe the '413 Patent. On information and belief, Samsung knowingly induces infringement by others, including resellers, retailers, and end users of the Accused Products. For example, Samsung's customers and the end users of the Accused Products test and/or operate the Accused Products in the United States in accordance with Samsung's instructions contained in, for example, its user manuals, and as Samsung intends One UI to be used, thereby also performing the claimed methods and directly infringing the asserted claims of the Accused Products requiring such operation. These facts give rise to a reasonable inference that Samsung knowingly induces others, including resellers, retailers, and end users, to directly infringe the '413 Patent, and that Samsung possesses a specific intent to cause such infringement.

94.     Samsung also contributes to infringement of the '413 Patent by selling for importation into the United States, importing into the United States, and/or selling within the United States after importation the accused devices and the non-staple constituent parts of those devices, which are not suitable for substantial noninfringing use and which embody a material part of the invention described in the '413 Patent. These mobile electronic devices are known by Samsung to be especially made or especially adapted for use in the infringement of the '413 Patent. These mobile devices are known by Samsung to be especially made or especially adapted for use

in the infringement of the '413 Patent. Specifically, on information and belief, Samsung sells the accused devices to resellers, retailers, and end users with knowledge that the devices are used for infringement. End users of those mobile electronic devices directly infringe the '413 Patent.

95.    Smith Interface has, to the extent required, complied with the marking statute, 35 U.S.C. § 287.

96.    As a result of Samsung's infringement of the '413 Patent, Smith Interface has suffered and continues to suffer damages. Thus, Smith Interface is entitled to recover from Samsung the damages Smith Interface sustained (and continues to sustain) as a result of Samsung's wrongful and infringing acts in an amount no less than a reasonable royalty.

97.    Samsung's infringement of the '413 Patent has been willful. Samsung has known of the '413 Patent as describe above and, at a minimum, at least since the time this complaint was filed and served on Samsung. Upon information and belief, Samsung deliberately and intentionally infringed, and continues to deliberately and intentionally infringe, the '413 Patent. Samsung knew or should have known that its actions would cause infringement of the '413 Patent, yet, Samsung has, and continues to, infringe the '413 Patent.

98.    This is an exceptional case warranting an award of treble damages to Smith Interface under 35 U.S.C. § 284, and an award of Smith Interface's attorney's fees under 35 U.S.C. § 285.

99.    By way of non-limiting example(s), set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '413 Patent by the Accused Products. This description is based on publicly available information. Smith Interface reserves the right to modify this description, including, for example, on the basis of information about the Accused Products that it obtains during discovery.

100.     **1(a): "*An electronic device, comprising: a display; a touch interface; one or more processors; memory; and one or more programs, wherein the one or more programs are stored in the memory and configured to be executed by the one or more processors, the one or more programs including instructions for:*"**— The Accused Products are electronic devices comprising, a display, a touch interface, one or more processors, memory, and one or more programs. The one or more programs are stored in memory and configured to be executed by the one or more processors, the one or more programs include instructions. An example is shown below:



101.     **1(b): "*displaying, utilizing the display, a graphical user interface;*"**— The Accused Products are designed to display, utilizing the display, a graphical user interface. An example is shown below:



102.    ***1(c): "when the graphical user interface is displayed, detecting, utilizing the touch interface, a first gesture that begins in connection with a first edge of the display and moves inward;"***— The Accused Products are designed such that when the graphical user interface is displayed, they detect, utilizing the touch interface, a first gesture that begins in connection with a first edge of the display and moves inward. An example is shown below:



103.     *1(d): "in response to the detection of the first gesture that begins in connection with the first edge and moves inward, displaying, utilizing the display, a first menu as sliding in and including one or more first menu items, and blurring at least a portion of the graphical user interface such that a magnitude of the blurring of the at least portion of the graphical user interface progressively increases as a function of an increase in a magnitude of the first gesture being detected;"* — The Accused Products, are designed such that in response to the detection of the first gesture that begins in connection with the first edge and moves inward, display, utilizing the display, a first menu as sliding in and including one or more first menu items, and blurring at least a portion of the graphical user interface such that a magnitude of the blurring of the portion of the graphical user interface progressively increases as a function of an increase in magnitude of the first gesture being detected. An example is shown below:

  

104.     *1(e): "when the first menu is displayed including the one or more first menu items: detecting, utilizing the touch interface, a first duration of contact on at least one of the one or more first menu items, in response to the first duration of contact on the at least one of*

***the one or more first menu items being detected to not surpass a threshold, performing a first operation, and in response to the first duration of contact on the at least one of the one or more first menu items being detected to surpass the threshold, performing a second operation;"***—
The Accused Products, are designed such that when the first menu is displayed including the one or more first menu items, detect, utilizing the touch interface, a first duration of contact on at least one of the one or more first menu items, in response to the first duration of contact on the at least one of the one or more first menu items being detected to not surpass a threshold, perform a first operation, and in response to the first duration of contact on the at least one of the one or more first menu items being detected to surpass the threshold, perform a second operation. An example is shown below:




 

105.    ***1(f): "when the graphical user interface is displayed, detecting, utilizing the touch interface, a second gesture that begins in connection with a second edge of the display and moves inward;"***— The Accused Products, are designed such that when the graphical user interface is displayed, detect, utilizing the touch interface, a second gesture that begins in connection with a second edge of the display and moves inward. An example is shown below:



106.    *1(g): "in response to the detection of the second gesture that begins in connection with the second edge and moves inward, displaying, utilizing the display, a second menu including one or more second menu items;"*— The Accused Products, are designed such that in response to the detection of the second gesture that begins in connection with the second edge and moves inward, display, utilizing the display, a second menu including one or more second menu items. An example is shown below:



107.    *1(h): "when the second menu is displayed including the one or more second menu items: detecting, utilizing the touch interface, a selection contact on at least one of the one or more second menu items, and in response to the selection contact being detected on the at least one of the one or more second menu items, performing a third operation;"*— The Accused Products, are designed such that when the second menu is displayed including the one or more second menu items, detect, utilizing the touch interface, a selection contact on at least one of the one or more second menu items, and in response to the selection contact being detected on the

at least one of the one or more second menu items, perform a third operation. An example is shown below:

 

108.    ***1(i): "wherein the electronic device is configured such that the graphical user interface is displayed in at least one virtual display layer, and at least one of the first menu or the second menu is displayed in at least one other virtual display layer."***— The Accused Products are configured such that the graphical user interface is displayed in at least one virtual display layer, and at least one of the first menu or the second menu is displayed in at least one other virtual display layer. An example is shown below:

 

### COUNT IV
### (CLAIM FOR PATENT INFRINGEMENT OF THE '931 PATENT)

109.    Smith Interface incorporates the foregoing paragraphs by reference as if fully set forth herein.

110.    A true and accurate copy of the '931 Patent is attached hereto as Exhibit D.

111.    All claims of the '931 Patent are valid and enforceable, and each enjoys a statutory presumption of validity under 35 U.S.C. § 282.

112.    The claims of the '931 patent are directed to an improvement of the user interface on an electronic device and not an abstract idea.

113.    Smith Interface is the sole owner of the '931 Patent and possesses rights to past damages.

114.    Independent claim 1 of the '931 Patent recites:

1. An electronic device, comprising:

a display;

a touch interface;

one or more processors;

memory; and

one or more programs, wherein the one or more programs are stored in the memory and configured to be executed by the one or more processors, the one or more programs including instructions to:

display, utilizing the display, a graphical user interface including a graphical user interface element;

while the graphical user interface is displayed, detect, utilizing the touch interface, a gesture on the graphical user interface element;

in response to detection, utilizing the touch interface, that the gesture is moving, display, utilizing the display, a menu; and

in response to detection, utilizing the touch interface, that a duration of the gesture is greater than a duration threshold:

alter, utilizing the display, a display of the graphical user interface element,

detect user input, and

customize at least one aspect of the gesture, based on the user input, where the altering and the customizing are performed without the menu being displayed, in response to detection that the duration of the gesture is greater than the duration threshold before the gesture is detected as moving, even when the gesture is detected as moving after detection that the duration of the gesture is greater than the duration threshold.

115.    In violation of 35 U.S.C. § 271, Samsung has been and is still infringing (both literally and/or under the doctrine of equivalents), contributing to infringement, and/or inducing others to infringe of the '931 Patent by making, using, offering for sale, selling, importing, or encouraging and intending that others to use mobile devices that practice at least claim 1 of the '931 Patent, including but not limited to the Accused Products.

116.    As described above, Samsung designs, manufactures, makes, uses, provides, imports into the United States, sells and/or offers for sale in the United States the Accused Products and thus directly infringes (both literally and/or under the doctrine of equivalents) the '931 Patent.

117.    On information and belief, Samsung is currently and will continue to actively induce and encourage infringement of the '931 Patent. Samsung has known of the '931 Patent as describe above and, at a minimum, at least since the time this complaint was filed and served on Samsung. On information and belief, Samsung nevertheless actively encourages others to infringe the '931 Patent. On information and belief, Samsung knowingly induces infringement by others, including resellers, retailers, and end users of the Accused Products. For example, Samsung's customers and the end users of the Accused Products test and/or operate the Accused Products in the United States in accordance with Samsung's instructions contained in, for example, its user manuals, and as Samsung intends One UI to be used, thereby also performing the claimed methods and directly infringing the asserted claims of the Accused Products requiring such operation. These facts give rise to a reasonable inference that Samsung knowingly induces others, including resellers, retailers, and end users, to directly infringe the '931 Patent, and that Samsung possesses a specific intent to cause such infringement.

118.    Samsung also contributes to infringement of the '931 Patent by selling for importation into the United States, importing into the United States, and/or selling within the United States after importation the accused devices and the non-staple constituent parts of those devices, which are not suitable for substantial noninfringing use and which embody a material part of the invention described in the '931 Patent. These mobile electronic devices are known by Samsung to be especially made or especially adapted for use in the infringement of the '931 Patent. These mobile devices are known by Samsung to be especially made or especially adapted for use

in the infringement of the '931 Patent. Specifically, on information and belief, Samsung sells the accused devices to resellers, retailers, and end users with knowledge that the devices are used for infringement. End users of those mobile electronic devices directly infringe the '931 Patent.

119. Smith Interface has, to the extent required, complied with the marking statute, 35 U.S.C. § 287.

120. As a result of Samsung's infringement of the '931 Patent, Smith Interface has suffered and continues to suffer damages. Thus, Smith Interface is entitled to recover from Samsung the damages Smith Interface sustained (and continues to sustain) as a result of Samsung's wrongful and infringing acts in an amount no less than a reasonable royalty.

121. Samsung's infringement of the '931 Patent has been willful. Samsung has known of the '413 Patent as describe above and, at a minimum, at least since the time this complaint was filed and served on Samsung. Upon information and belief, Samsung deliberately and intentionally infringed, and continues to deliberately and intentionally infringe, the '931 Patent. Samsung knew or should have known that its actions would cause infringement of the '931 Patent, yet, Samsung has, and continues to, infringe the '931 Patent.

122. This is an exceptional case warranting an award of treble damages to Smith Interface under 35 U.S.C. § 284, and an award of Smith Interface's attorney's fees under 35 U.S.C. § 285.

123. By way of non-limiting example(s), set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '931 Patent by the Accused Products. This description is based on publicly available information. Smith Interface reserves the right to modify this description, including, for example, on the basis of information about the Accused Products that it obtains during discovery.

124.    *1(a): "An electronic device, comprising: a display; a touch interface; one or more processors; memory; and one or more programs, wherein the one or more programs are stored in the memory and configured to be executed by the one or more processors, the one or more programs including instructions to:"*— The Accused Products are electronic devices comprising a display, a touch interface, one or more processors, memory, and one or more programs. The one or more programs are stored in the memory and configured to be executed by the one or more processors, the one or more programs include instructions. An example is shown below:



125.    *1(b): "display, utilizing the display, a graphical user interface including a graphical user interface element;"*— The Accused Products are designed to display, utilizing the display, a graphical user interface including a graphical user interface element. An example is shown below:



126.    ***1(c): "while the graphical user interface is displayed, detect, utilizing the touch interface, a gesture on the graphical user interface element;"***— The Accused Products, are designed such that while the graphical user interface is displayed, detect, utilizing the touch interface, a gesture on the graphical user interface element. An example is shown below:



127.   *1(d): "in response to detection, utilizing the touch interface, that the gesture is moving, display, utilizing the display, a menu; and"*— The Accused Products, are designed such that in response to detecting, utilizing the touch interface, that the gesture is moving, display, utilizing the display, a menu. An example is shown below:

  

128.   *1(e): "in response to detection, utilizing the touch interface, that a duration of the gesture is greater than a duration threshold: alter, utilizing the display, a display of the graphical user interface element,"*— The Accused Products, are designed such that in response to detecting, utilizing the touch interface, that a duration of the gesture is greater than a duration threshold, alter, utilizing the display, a display of the graphical user interface element. An example is shown below:

 

129.    ***1(f): "detect user input, and"***— The Accused Products are designed to detect user input. An example is shown below:



130.    ***1(g): "customize at least one aspect of the gesture, based on the user input, where the altering and the customizing are performed without the menu being displayed, in response***

*to detection that the duration of the gesture is greater than the duration threshold before the gesture is detected as moving, even when the gesture is detected as moving after detection that the duration of the gesture is greater than the duration threshold."*— The Accused Products are designed to customize an aspect of the gesture, based on the user input, the altering and the customizing are performed without the menu being displayed, in response to the detection that the duration of the gesture is greater than the duration threshold before the gesture is detected as moving, even when the gesture is detected as moving after detection that the duration of the gesture is greater than the duration threshold. An example is shown below:

  

<u>**COUNT V**</u>
**(CLAIM FOR PATENT INFRINGEMENT OF THE '754 PATENT)**

131.    Smith Interface incorporates the foregoing paragraphs by reference as if fully set forth herein.

132.    A true and accurate copy of the '754 Patent is attached hereto as Exhibit E.

133.    All claims of the '754 Patent are valid and enforceable, and each enjoys a statutory presumption of validity under 35 U.S.C. § 282.

134.    The claims of the '754 patent are directed to an improvement of the user interface on an electronic device and not an abstract idea.

135.    Smith Interface is the sole owner of the '754 Patent and possesses rights to past damages.

136.    Independent claim 2 of the '754 Patent recites:

> 2. An apparatus, comprising:
>
> at least one non-transitory memory;
>
> a touch screen; and
>
> one or more processors in communication with the at least one non-transitory memory, and the touch screen, wherein the one or more processors execute instructions in the at least one non-transitory memory, to cause the apparatus to:
>
> > display an object and at least one other object;
> >
> > detect at least part of a gesture on the touch screen; and
> >
> > during detection of at least a portion of the gesture before a completion thereof is detected, blur, based on a change in a magnitude of the gesture being detected on the touch screen, at least a portion of the at least one other object.

137.    In violation of 35 U.S.C. § 271, Samsung has been and is still infringing (both literally and/or under the doctrine of equivalents), contributing to infringement, and/or inducing others to infringe of the '754 Patent by making, using, offering for sale, selling, importing, or encouraging and intending that others to use mobile devices that practice at least claim 2 of the '754 Patent, including but not limited to the Accused Products.

138.    As described above, Samsung designs, manufactures, makes, uses, provides, imports into the United States, sells and/or offers for sale in the United States the Accused Products and thus directly infringes (both literally and/or under the doctrine of equivalents) the '754 Patent.

139.    On information and belief, Samsung is currently and will continue to actively induce and encourage infringement of the '212 Patent. Samsung has known of the '754 Patent as describe above and, at a minimum, at least since the time this complaint was filed and served on Samsung. On information and belief, Samsung nevertheless actively encourages others to infringe the '754 Patent. On information and belief, Samsung knowingly induces infringement by others, including resellers, retailers, and end users of the Accused Products. For example, Samsung's customers and the end users of the Accused Products test and/or operate the Accused Products in the United States in accordance with Samsung's instructions contained in, for example, its user manuals, and as Samsung intends One UI to be used, thereby also performing the claimed methods and directly infringing the asserted claims of the Accused Products requiring such operation. These facts give rise to a reasonable inference that Samsung knowingly induces others, including resellers, retailers, and end users, to directly infringe the '754 Patent, and that Samsung possesses a specific intent to cause such infringement.

140.    Samsung also contributes to infringement of the '754 Patent by selling for importation into the United States, importing into the United States, and/or selling within the United States after importation the accused devices and the non-staple constituent parts of those devices, which are not suitable for substantial noninfringing use and which embody a material part of the invention described in the '754 Patent. These mobile electronic devices are known by Samsung to be especially made or especially adapted for use in the infringement of the '754 Patent. These mobile devices are known by Samsung to be especially made or especially adapted for use

in the infringement of the '754 Patent. Specifically, on information and belief, Samsung sells the accused devices to resellers, retailers, and end users with knowledge that the devices are used for infringement. End users of those mobile electronic devices directly infringe the '754 Patent.

141.    Smith Interface has, to the extent required, complied with the marking statute, 35 U.S.C. § 287.

142.    As a result of Samsung's infringement of the '754 Patent, Smith Interface has suffered and continues to suffer damages. Thus, Smith Interface is entitled to recover from Samsung the damages Smith Interface sustained (and continues to sustain) as a result of Samsung's wrongful and infringing acts in an amount no less than a reasonable royalty.

143.    Samsung's infringement of the '754 Patent has been willful. Samsung has known of the '754 Patent as describe above and, at a minimum, at least since the time this complaint was filed and served on Samsung. Upon information and belief, Samsung deliberately and intentionally infringed, and continues to deliberately and intentionally infringe, the '754 Patent. Samsung knew or should have known that its actions would cause infringement of the '754 Patent, yet, Samsung has, and continues to, infringe the '754 Patent.

144.    This is an exceptional case warranting an award of treble damages to Smith Interface under 35 U.S.C. § 284, and an award of Smith Interface's attorney's fees under 35 U.S.C. § 285.

145.    By way of non-limiting example(s), set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '754 Patent by the Accused Products. This description is based on publicly available information. Smith Interface reserves the right to modify this description, including, for example, on the basis of information about the Accused Products that it obtains during discovery.

146.    **2(a): *"An apparatus, comprising: at least one non-transitory memory; a touch screen; and one or more processors in communication with the at least one non-transitory memory, and the touch screen, wherein the one or more processors execute instructions in the at least one non-transitory memory, to cause the apparatus to:"*** — The Accused Products are apparatuses comprising at least one non-transitory memory, a touch screen, and one or more processors in communication with the at least one non-transitory memory and touch screen. The one or more processors execute instructions in the at least one non-transitory memory to cause the apparatus to perform. An example is shown below:



147.    **2(b): *"display an object and at least one other object;"*** — The Accused Products are designed to display an object and at least one other object. An example is shown below:



148.    *2(c): "detect at least part of a gesture on the touch screen; and"*— The Accused

Products are designed to detect at least part of a gesture on the touch screen. An example is shown

below:



149.    ***2(d): "during detection of at least a portion of the gesture before a completion thereof is detected, blur, based on a change in a magnitude of the gesture being detected on the touch screen, at least a portion of the at least one other object."***— The Accused Products, are designed such that during detection of at least a portion of the gesture before a completion thereof is detected, blur, based on a change in a magnitude of the gesture being detected on the touch screen, at least a portion of the at least one other object. An example is shown below:

  

<u>**COUNT VI**</u>
<u>**(CLAIM FOR PATENT INFRINGEMENT OF THE '819 PATENT)**</u>

150.    Smith Interface incorporates the foregoing paragraphs by reference as if fully set forth herein.

151.    A true and accurate copy of the '819 Patent is attached hereto as Exhibit F.

152.    All claims of the '819 Patent are valid and enforceable, and each enjoys a statutory presumption of validity under 35 U.S.C. § 282.

153.    The claims of the '819 patent are directed to an improvement of the user interface on an electronic device and not an abstract idea.

154.    Smith Interface is the sole owner of the '819 Patent and possesses rights to past damages.

155.    Independent claim 1 of the '819 Patent recites:

1. An electronic device, comprising:

a display;

a touch interface;

one or more processors;

memory; and

one or more programs, wherein the one or more programs are stored in the memory and configured to be executed by the one or more processors, the one or more programs including instructions for:

displaying, on the display, an active application among a plurality of active applications that are displayed utilizing a plurality of different user interface elements that are displayed utilizing one or more layers that are different from at least one other layer;

detecting, on the touch interface, a first-orientation gesture on the active application;

in response to the detection of the first-orientation gesture on the active application, performing a first operation including moving the active application, such that the active application changes in visibility during the movement;

detecting, on the touch interface, a second-orientation gesture on the active application;

in response to the detection of the second-orientation gesture on the active application, performing a second operation;

detecting, on the touch interface, a particular gesture on the active application; and

after the detection of the particular gesture on the active application, displaying an application interface of the active application that is configured for performing one or more different operations, that is different from the first and second operations, based on a duration of the particular gesture.

156.    In violation of 35 U.S.C. § 271, Samsung has been and is still infringing (both literally and/or under the doctrine of equivalents), contributing to infringement, and/or inducing others to infringe of the '819 Patent by making, using, offering for sale, selling, importing, or encouraging and intending that others to use mobile devices that practice at least claim 1 of the '819 Patent, including but not limited to the Accused Products.

157.    As described above, Samsung designs, manufactures, makes, uses, provides, imports into the United States, sells and/or offers for sale in the United States the Accused Products and thus directly infringes (both literally and/or under the doctrine of equivalents) the '819 Patent.

158.    On information and belief, Samsung is currently and will continue to actively induce and encourage infringement of the '819 Patent. Samsung has known of the '819 Patent as describe above and, at a minimum, at least since the time this complaint was filed and served on Samsung. On information and belief, Samsung nevertheless actively encourages others to infringe the '819 Patent. On information and belief, Samsung knowingly induces infringement by others, including resellers, retailers, and end users of the Accused Products. For example, Samsung's customers and the end users of the Accused Products test and/or operate the Accused Products in the United States in accordance with Samsung's instructions contained in, for example, its user manuals, and as Samsung intends One UI to be used, thereby also performing the claimed methods and directly infringing the asserted claims of the Accused Products requiring such operation. These facts give rise to a reasonable inference that Samsung knowingly induces others, including resellers, retailers, and end users, to directly infringe the '819 Patent, and that Samsung possesses a specific intent to cause such infringement.

159.    Samsung also contributes to infringement of the '819 Patent by selling for importation into the United States, importing into the United States, and/or selling within the United States after importation the accused devices and the non-staple constituent parts of those devices, which are not suitable for substantial noninfringing use and which embody a material part of the invention described in the '819 Patent. These mobile electronic devices are known by Samsung to be especially made or especially adapted for use in the infringement of the '819 Patent. These mobile devices are known by Samsung to be especially made or especially adapted for use in the infringement of the '819 Patent. Specifically, on information and belief, Samsung sells the accused devices to resellers, retailers, and end users with knowledge that the devices are used for infringement. End users of those mobile electronic devices directly infringe the '819 Patent.

160.    Smith Interface has, to the extent required, complied with the marking statute, 35 U.S.C. § 287.

161.    As a result of Samsung's infringement of the '819 Patent, Smith Interface has suffered and continues to suffer damages. Thus, Smith Interface is entitled to recover from Samsung the damages Smith Interface sustained (and continues to sustain) as a result of Samsung's wrongful and infringing acts in an amount no less than a reasonable royalty.

162.    Samsung's infringement of the '819 Patent has been willful. Samsung has known of the '819 Patent as describe above and, at a minimum, at least since the time this complaint was filed and served on Samsung. Upon information and belief, Samsung deliberately and intentionally infringed, and continues to deliberately and intentionally infringe, the '819 Patent. Samsung knew or should have known that its actions would cause infringement of the '819 Patent, yet, Samsung has, and continues to, infringe the '819 Patent.

163.    This is an exceptional case warranting an award of treble damages to Smith Interface under 35 U.S.C. § 284, and an award of Smith Interface's attorney's fees under 35 U.S.C. § 285.

164.    By way of non-limiting example(s), set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '819 Patent by the Accused Products. This description is based on publicly available information. Smith Interface reserves the right to modify this description, including, for example, on the basis of information about the Accused Products that it obtains during discovery.

165.    ***1(a): "An electronic device, comprising: a display; a touch interface; one or more processors; memory; and one or more programs, wherein the one or more programs are stored in the memory and configured to be executed by the one or more processors, the one or more programs including instructions for:"***— The Accused Products are electronic devices comprising a display, touch interface, one or more processors, memory, and one or more programs. The one or more programs are stored in memory and configured to be executed by the one or more processors, the one or more programs include instructions. An example is shown below:



1

166.    ***1(b): "displaying, on the display, an active application among a plurality of active applications that are displayed utilizing a plurality of different user interface elements that are displayed utilizing one or more layers that are different from at least one other layer;"***— The Accused Products are designed to display, on the display, an active application among a plurality of active applications that are displayed utilizing a plurality of different user interface elements that are displayed utilizing one or more layers that are different from at least one other layer. An example is shown below:



167.    ***1(c): "detecting, on the touch interface, a first-orientation gesture on the active application;"*** — The Accused Products are designed to detect, on the touch interface, a first-orientation gesture on the active application. An example is shown below:



168.    *1(d): "in response to the detection of the first-orientation gesture on the active application, performing a first operation including moving the active application, such that the active application changes in visibility during the movement;"*— The Accused Products, are designed such that in response to the detection of the first-orientation gesture on the active application, perform a first operation including moving the active application, such that the active application changes in visibility during the movement. An example is shown below:

  

169.    *1(e): "detecting, on the touch interface, a second-orientation gesture on the active application;"*— The Accused Products are designed to detect, on the touch interface, a second-orientation gesture on the active application. An example is shown below:

 

170.    *1(f): "in response to the detection of the second-orientation gesture on the active application, performing a second operation;"*— The Accused Products, are designed such that in response to the detection of the second-orientation gestion on the active application, perform a second operation. An example is shown below:









171.    *1(g): "detecting, on the touch interface, a particular gesture on the active application; and"*— The Accused Products are designed to detect, on the touch interface, a particular gesture on the active application. An example is shown below:



172.    *1(h): "after the detection of the particular gesture on the active application, displaying an application interface of the active application that is configured for performing one or more different operations, that is different from the first and second operations, based on a duration of the particular gesture."* — The Accused Products, such that after the detection of the particular gesture on the active application, display an application interface of the active application that is configured to perform one or more different operations, that is different from the first and second operations, based on a duration of the particular gesture.



**COUNT VII**
**(CLAIM FOR PATENT INFRINGEMENT OF THE '580 PATENT)**

173.    Smith Interface incorporates the foregoing paragraphs by reference as if fully set forth herein.

174.    A true and accurate copy of the '580 Patent is attached hereto as Exhibit G.

175.    All claims of the '580 Patent are valid and enforceable, and each enjoys a statutory presumption of validity under 35 U.S.C. § 282.

176.    The claims of the '931 patent are directed to an improvement of the user interface on an electronic device and not an abstract idea.

177.    Smith Interface is the sole owner of the '580 Patent and possesses rights to past damages.

178.    Independent claim 1 of the '580 Patent recites:

1. An apparatus, comprising:

at least one non-transitory memory;

a touch screen;

a camera; and

one or more processors in communication with the at least one non-transitory memory, the touch screen, and the camera, wherein the one or more processors execute instructions stored in the non-transitory memory to cause the apparatus to:

display, via the touch screen, a first virtual display layer including contents;

display, via the touch screen, at least one user interface element;

detect, via the touch screen, at least a portion of touch on the least one user interface element;

when an aspect of the touch is detected to surpass a threshold, display, via the touch screen, a plurality of markings in a second virtual display layer that appears to have a lesser depth than the first virtual display layer, where at least a portion of the second virtual display layer is at least partially translucent so that at least a portion of the contents of the first virtual display layer is visible through the at least portion of the second virtual display layer;

detect, via the touch screen, a touch movement on at least one of the plurality of marking; and

during detection of the touch movement on the at least one of the plurality of marking in the second virtual display layer that appears to have the lesser depth than the first virtual display layer, display, via the touch screen, a movement of the markings in the second virtual display layer as a function of the touch movement; and

perform a zoom operation on the at least portion of the contents of the first virtual display layer without performing the zoom operation on the plurality of markings in the second virtual display layer, where the zoom operation correlates with the movement of the markings in the second virtual display layer, and the at least portion of the second virtual display layer is at least partially translucent so that a result of the zoom operation on the at least portion of the contents of the first virtual display layer is visible through the at least portion of the second virtual display layer.

179.    In violation of 35 U.S.C. § 271, Samsung has been and is still infringing (both literally and/or under the doctrine of equivalents), contributing to infringement, and/or inducing others to infringe of the '580 Patent by making, using, offering for sale, selling, importing, or encouraging and intending that others to use mobile devices that practice at least claim 1 of the '580 Patent, including but not limited to the Accused Products.

180.    As described above, Samsung designs, manufactures, makes, uses, provides, imports into the United States, sells and/or offers for sale in the United States the Accused Products and thus directly infringes (both literally and/or under the doctrine of equivalents) the '580 Patent.

181.    On information and belief, Samsung is currently and will continue to actively induce and encourage infringement of the '580 Patent. Samsung has known of the '580 Patent as describe above and, at a minimum, at least since the time this complaint was filed and served on Samsung. On information and belief, Samsung nevertheless actively encourages others to infringe the '580 Patent. On information and belief, Samsung knowingly induces infringement by others, including resellers, retailers, and end users of the Accused Products. For example, Samsung's customers and the end users of the Accused Products test and/or operate the Accused Products in the United States in accordance with Samsung's instructions contained in, for example, its user manuals, and as Samsung intends One UI to be used, thereby also performing the claimed methods and directly infringing the asserted claims of the Accused Products requiring such operation. These facts give rise to a reasonable inference that Samsung knowingly induces others, including resellers, retailers, and end users, to directly infringe the '819 Patent, and that Samsung possesses a specific intent to cause such infringement.

182.    Samsung also contributes to infringement of the '580 Patent by selling for importation into the United States, importing into the United States, and/or selling within the

United States after importation the accused devices and the non-staple constituent parts of those devices, which are not suitable for substantial noninfringing use and which embody a material part of the invention described in the '580 Patent. These mobile electronic devices are known by Samsung to be especially made or especially adapted for use in the infringement of the '580 Patent. These mobile devices are known by Samsung to be especially made or especially adapted for use in the infringement of the '580 Patent. Specifically, on information and belief, Samsung sells the accused devices to resellers, retailers, and end users with knowledge that the devices are used for infringement. End users of those mobile electronic devices directly infringe the '580 Patent.

183. Smith Interface has, to the extent required, complied with the marking statute, 35 U.S.C. § 287.

184. As a result of Samsung's infringement of the '580 Patent, Smith Interface has suffered and continues to suffer damages. Thus, Smith Interface is entitled to recover from Samsung the damages Smith Interface sustained (and continues to sustain) as a result of Samsung's wrongful and infringing acts in an amount no less than a reasonable royalty.

185. Samsung's infringement of the '580 Patent has been willful. Samsung has known of the '212 Patent as describe above and, at a minimum, at least since the time this complaint was filed and served on Samsung. Upon information and belief, Samsung deliberately and intentionally infringed, and continues to deliberately and intentionally infringe, the '580 Patent. Samsung knew or should have known that its actions would cause infringement of the '580 Patent, yet, Samsung has, and continues to, infringe the '580 Patent.

186. This is an exceptional case warranting an award of treble damages to Smith Interface under 35 U.S.C. § 284, and an award of Smith Interface's attorney's fees under 35 U.S.C. § 285.

187.    By way of non-limiting example(s), set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '580 Patent by the Accused Products. This description is based on publicly available information. Smith Interface reserves the right to modify this description, including, for example, on the basis of information about the Accused Products that it obtains during discovery.

188.    ***1(a): "An apparatus, comprising: at least one non-transitory memory; a touch screen; a camera; and one or more processors in communication with the at least one non-transitory memory, the touch screen, and the camera, wherein the one or more processors execute instructions stored in the non-transitory memory to cause the apparatus to:"***—The Accused Products are apparatuses with a non-transitory memory, a touch screen, a camera, and one or more processors in communication with the one non-transitory memory, touch screen, and camera. The one or more processors are designed to execute instructions stored in the non-transitory memory to cause the apparatus to perform. An example is shown below:



189.    *1(b): "display, via the touch screen, a first virtual display layer including contents;"*—The Accused Products are designed to display, via the touch screen, a first virtual display layer that includes contents. An example is shown below:



190.    *1(c): "display, via the touch screen, at least one user interface element;"*—The Accused Products are designed to display, via the touch screen, a user interface element. An example is shown below:



191.    *1(d): "detect, via the touch screen, at least a portion of touch on the least one user interface element;"*—The Accused Products are designed to detect, via the touch screen, a portion of touch on the user interface element. An example is shown below:



192.    *1(e): "when an aspect of the touch is detected to surpass a threshold, display, via the touch screen, a plurality of markings in a second virtual display layer that appears to have a lesser depth than the first virtual display layer, where at least a portion of the second virtual*

1

*display layer is at least partially translucent so that at least a portion of the contents of the first virtual display layer is visible through the at least portion of the second virtual display layer;"*

—The Accused Products, are designed to such that when an aspect of the touch is detected to surpass a threshold, display a plurality of markings in a second virtual display layer that appears to have a lesser depth than the first virtual display layer. A portion of the second virtual display layer is partially translucent so that a portion of the contents of the first virtual display layer are visible through the portion of the second virtual display layer. An example is shown below:

 

193.    *1(f): "detect, via the touch screen, a touch movement on at least one of the plurality of marking; and"* —The Accused Products are designed to detect a touch movement on at least one of the plurality of markings. An example is shown below:

 

194.    *1(g): "during detection of the touch movement on the at least one of the plurality of marking in the second virtual display layer that appears to have the lesser depth than the first virtual display layer, display, via the touch screen, a movement of the markings in the second virtual display layer as a function of the touch movement; and"*—The Accused Products, are designed such that during detection of the touch movement on at least one of the plurality of markings in the second virtual display layer that appears to have the lesser depth than the first virtual display layer, display a movement of the markings in the second virtual display layer as a function of the touch movement. An example is shown below:

1

  

195.    *1(h): "perform a zoom operation on the at least portion of the contents of the first virtual display layer without performing the zoom operation on the plurality of markings in the second virtual display layer, where the zoom operation correlates with the movement of the markings in the second virtual display layer, and the at least portion of the second virtual display layer is at least partially translucent so that a result of the zoom operation on the at least portion of the contents of the first virtual display layer is visible through the at least portion of the second virtual display layer."*—The Accused Products are designed to perform a zoom operation on a portion of the contents of the first virtual display layer without performing the zoom operation on the plurality of markings in the second virtual display layer. A portion of the second virtual display layer is partially translucent so that a result of the zoom operation on the portion of the contents of the first virtual display layer is visible through the portion of the second virtual display layer. An example is shown below:

  

### COUNT VIII
### (CLAIM FOR PATENT INFRINGEMENT OF THE '758 PATENT)

196.     Smith Interface incorporates the foregoing paragraphs by reference as if fully set forth herein.

197.     A true and accurate copy of the '758 Patent is attached hereto as Exhibit H.

198.     All claims of the '758 Patent are valid and enforceable, and each enjoys a statutory presumption of validity under 35 U.S.C. § 282.

199.     The claims of the '758 patent are directed to an improvement of the user interface on an electronic device and not an abstract idea.

200.     Independent Claim 1 of the '758 Patent recites:

1. An electronic device , comprising:

a display ;

a touch - sensitive surface ;

one or more processors;

memory ; and

one or more programs, wherein the one or more programs are stored in the memory and configured to be executed by the one or more processors, the one or more programs including instructions for:

displaying, on the display, an application launching user interface that includes a plurality of application icons for launching corresponding applications;

while displaying the application launching user interface, detecting a first single-finger touch input that includes detecting the first single-finger touch input at a location on the touch-sensitive surface that corresponds to a first application icon of the plurality of application icons, wherein the first application icon is for launching a first application that is associated with one or more corresponding action options; and

in response to detecting the first single-finger touch input, determining a response to the first single-finger touch input based on evaluating the first single-finger touch input against at least one of a plurality of criteria, including evaluating a duration of the first single-finger touch input against at least one of: one or more application-launch criteria, one or more action-option-display criteria, or one or more operation criteria, and further including evaluating a movement of the first single-finger touch input against one or more movement criteria, for:

in accordance with a determination that the first single-finger touch input meets the one or more application-launch criteria that is met when the duration of the first single-finger touch input is evaluated to be less than a first time threshold, launching the first application,

in accordance with a determination that the first single-finger touch input meets the one or more action-option-display criteria that is met when the duration of the first single-finger touch input is evaluated to be greater than the first time threshold, displaying one or more action option objects associated with the first application without launching the first application,

in accordance with a determination that the first single-finger touch input meets the one or more operation criteria that is met when the duration of the first single-finger touch input is evaluated to be greater than a second time threshold that is greater than the first

time threshold, performing an operation in connection with the first application icon, and

in accordance with a determination that the first single-finger touch input meets the one or more movement criteria, moving the first application icon in a foreground virtual display layer so that the first application icon appears to float above a background virtual display layer.

201.    In violation of 35 U.S.C. § 271, Samsung has been and is still infringing (both literally and/or under the doctrine of equivalents), contributing to infringement, and/or inducing others to infringe of the '758 Patent by making, using, offering for sale, selling, importing, or encouraging and intending that others to use mobile devices that practice at least claim 1 of the '758 Patent, including but not limited to the Accused Products.

202.    As described above, Samsung designs, manufactures, makes, uses, provides, imports into the United States, sells and/or offers for sale in the United States the Accused Products and thus directly infringes (both literally and/or under the doctrine of equivalents) the '758 Patent.

203.    On information and belief, Samsung is currently and will continue to actively induce and encourage infringement of the '758 Patent. Samsung has known of the '758 Patent as describe above and, at a minimum, at least since the time this complaint was filed and served on Samsung. On information and belief, Samsung nevertheless actively encourages others to infringe the '758 Patent. On information and belief, Samsung knowingly induces infringement by others, including resellers, retailers, and end users of the Accused Products. For example, Samsung's customers and the end users of the Accused Products test and/or operate the Accused Products in the United States in accordance with Samsung's instructions contained in, for example, its user manuals, and as Samsung intends One UI to be used, thereby also performing the claimed methods and directly infringing the asserted claims of the Accused Products requiring such operation. These facts give rise to a reasonable inference that Samsung knowingly induces others, including

1

resellers, retailers, and end users, to directly infringe the '758 Patent, and that Samsung possesses a specific intent to cause such infringement.

204.    Samsung also contributes to infringement of the '758 Patent by selling for importation into the United States, importing into the United States, and/or selling within the United States after importation the accused devices and the non-staple constituent parts of those devices, which are not suitable for substantial noninfringing use and which embody a material part of the invention described in the '758 Patent. These mobile electronic devices are known by Samsung to be especially made or especially adapted for use in the infringement of the '758 Patent. These mobile devices are known by Samsung to be especially made or especially adapted for use in the infringement of the '758 Patent. Specifically, on information and belief, Samsung sells the accused devices to resellers, retailers, and end users with knowledge that the devices are used for infringement. End users of those mobile electronic devices directly infringe the '758 Patent.

205.    Smith Interface has, to the extent required, complied with the marking statute, 35 U.S.C. § 287.

206.    As a result of Samsung's infringement of the '758 Patent, Smith Interface has suffered and continues to suffer damages. Thus, Smith Interface is entitled to recover from Samsung the damages Smith Interface sustained (and continues to sustain) as a result of Samsung's wrongful and infringing acts in an amount no less than a reasonable royalty.

207.    Samsung's infringement of the '758 Patent has been willful. Samsung has known of the '758 Patent as describe above and, at a minimum, at least since the time this complaint was filed and served on Samsung. Upon information and belief, Samsung deliberately and intentionally infringed, and continues to deliberately and intentionally infringe, the '758 Patent. Samsung knew

or should have known that its actions would cause infringement of the '758 Patent, yet, Samsung has, and continues to, infringe the '758 Patent.

208.   This is an exceptional case warranting an award of treble damages to Smith Interface under 35 U.S.C. § 284, and an award of Smith Interface's attorney's fees under 35 U.S.C. § 285.

209.   By way of non-limiting example(s), set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '758 Patent by the Accused Products. This description is based on publicly available information. Smith Interface reserves the right to modify this description, including, for example, on the basis of information about the Accused Products that it obtains during discovery.

210.   *1(a): "An electronic device, comprising: a display; a touch-sensitive surface; one or more processors; memory; and one or more programs, wherein the one or more programs are stored in the memory and configured to be executed by the one or more processors, the one or more programs including instructions for:"*—The Accused Products are electronic devices that comprise a display, a touch-sensitive surface, one or more processors, memory, and one or more programs. The one or more programs are stored in the memory and configured to be executed by the one or more processors, the one or more programs include instructions. An example is shown below:



211. **1(b): "displaying, on the display, an application launching user interface that includes a plurality of application icons for launching corresponding applications;"**— The Accused Products are designed to display, on the display, an application launching user interface that includes a plurality of application icons for launching corresponding applications. An example is shown below:



212.    *1(c): "while displaying the application launching user interface, detecting a first single-finger touch input that includes detecting the first single-finger touch input at a location on the touch-sensitive surface that corresponds to a first application icon of the plurality of application icons, wherein the first application icon is for launching a first application that is associated with one or more corresponding action options; and"*—The Accused Products are designed such that, while displaying the application launching user interface, they detect a first single-finger touch input that includes detecting the first single-finger touch input at a location on the touch-sensitive surface that corresponds to a first application icon of the plurality of application icons, wherein the first application icon is for launching a first application that is associated with one or more corresponding action options.  An example is shown below:

 

213.    *1(d): "in response to detecting the first single-finger touch input, determining a response to the first single-finger touch input based on evaluating the first single-finger touch input against at least one of a plurality of criteria, including evaluating a duration of the first single-finger touch input against at least one of: one or more application-launch criteria, one or more action-option-display criteria, or one or more operation criteria, and further including evaluating a movement of the first single-finger touch input against one or more movement criteria, for:"*—The Accused Products, are designed such that in response to detecting the first single-finger touch input, determine a response to the first single-finger touch input based on evaluating the first single-finger touch input against at least one of a plurality of criteria, including evaluating a duration of the first single-finger touch input against at least one of a one or more application-launch criteria, one or more action-option-display criteria, or one or more operation criteria, and further including evaluating a movement of the first single-finger touch input against one or more movement criteria. An example is shown below:





















  

214.    *1(e): "in accordance with a determination that the first single-finger touch input meets the one or more application-launch criteria that is met when the duration of the first single-finger touch input is evaluated to be less than a first time threshold, launching the first application,"*—The Accused Products, are designed such that in accordance with a determination that the first single-finger touch input meets the one or more application-launch criteria that is met when the duration of the first single-finger touch input is evaluated to be less than a first time threshold, launch the first application. An example is shown below:

 

215.    ***1(f): "in accordance with a determination that the first single-finger touch input meets the one or more action-option-display criteria that is met when the duration of the first single-finger touch input is evaluated to be greater than the first time threshold, displaying one or more action option objects associated with the first application without launching the first application,"***—The Accused Products are designed such that in accordance with a determination that the first single-finger touch input meets the one or more action-option-display criteria that is met when the duration of the first single-finger touch input is evaluated to be greater than the first time threshold, display one or more action option objects associated with the first application without launching the first application. An example is shown below:

 

216.    ***1(g): "in accordance with a determination that the first single-finger touch input meets the one or more operation criteria that is met when the duration of the first single-finger touch input is evaluated to be greater than a second time threshold that is greater than the first time threshold, performing an operation in connection with the first application icon, and "***—The Accused Products are designed such that in accordance with a determination that the first single-finger touch input meets the one or more operation criteria that is met when the duration of the first single-finger touch input is evaluated to be greater than a second time threshold that is greater than the first time threshold, perform an operation in connection with the first application icon,. An example is shown below:

  

217.    *1(h): "in accordance with a determination that the first single-finger touch input meets the one or more movement criteria, moving the first application icon in a foreground virtual display layer so that the first application icon appears to float above a background virtual display layer."*—The Accused Products are designed such that in accordance with a determination that the first single-finger touch input meets the one or more movement criteria, move the first application icon in a foreground virtual display layer so that the first application icon appears to float above a background virtual display layer.

  

## JURY DEMAND

218.    Smith Interface demands, pursuant to Federal Rule of Civil Procedure 38, a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

219.    Smith Interface respectfully requests that the Court:

A.    Adjudge that Samsung has and is infringing the Asserted Patents;

B.    Adjudge that Samsung's infringement of the Asserted Patents has been willful;

C.    Award Smith Interface damages in an amount adequate to compensate Smith Interface for Samsung's infringement of the Asserted Patents, but in no event less than a reasonable royalty under 35 U.S.C. § 284;

D.    Award enhanced damages pursuant to 35 U.S.C. § 284;

E.      Enter an order finding that this is an exceptional case and awarding Smith Interface its costs, attorney's fees, and expenses, whether under 35 U.S.C. § 285 or otherwise;

F.      Award pre-judgment and post-judgment interest on the damages awarded at the highest rate allowed by law;

G.      Order an accounting of all damages;

H.      Grant Smith Interface such other and further relief, general and special, at law or in equity, as the Court deems just and equitable.

Dated: July 29, 2022                    Respectfully submitted,

/s/ *Brett. C. Govett*
BRETT C. GOVETT
  Texas State Bar No. 08235900
  brett.govett@nortonrosefulbright.com
**NORTON ROSE FULBRIGHT US LLP**
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201
Telephone: (214) 855-8000
Telecopier: (214) 855-8200

DANIEL S. LEVENTHAL
  Texas State Bar No. 24050923
  daniel.leventhal@nortonrosefulbright.com
**NORTON ROSE FULBRIGHT US LLP**
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Telephone: (713) 651-5151
Telecopier: (713) 651-5246

BRIAN BUSS
  Texas State Bar No. 00798089
  brian@bussbenefield.com
MICHAEL BENEFIELD
  Texas State Bar No. 24073408
  michael@bussbenefield.com
**BUSS & BENEFIELD, PLLC**

8202 Two Coves Drive
Austin, Texas 78730
Phone: 512-619-4451
Fax: 1-844-637-365

*Counsel for Plaintiff Smith Interface
Technologies, LLC*